J-S13026-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ADOPTION OF: A.E.R.L., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.L., MOTHER | : | No. 56 MDA 2022 |

Appeal from the Decree Entered December 14, 2021
In the Court of Common Pleas of Franklin County
Orphans' Court at No(s): 28-ADOPT-2020

BEFORE: STABILE, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:             **FILED AUGUST 08, 2022**

Appellant, D.L. ("Mother") appeals from the decree entered in the Franklin County Court of Common Pleas, Orphans' Court, which granted the petition of Franklin County Children and Youth Services ("CYS") for involuntary termination of Mother's parental rights to her minor child, A.E.R.L. ("Child"). We affirm.

The Orphans' Court set forth the relevant facts and procedural history of this case as follows:

> [Child] is a Caucasian female child who is three (3) years old, having been born [in] 2018 in Chambersburg, Franklin County, Pennsylvania.
>
>         *     *     *
>
> The natural mother of [Child] is [D.N.L.]…

---

[*] Former Justice specially assigned to the Superior Court.

The natural father of [Child] is [D.E.L.] [("Father")]…

[Mother] and [Father] [(collectively "Parents")] have been married since May 5, 2019.

On October 1, 2018, [CYS] received a referral from hospital staff that [Mother] had given birth to [Child.]. This reporting source expressed concern regarding [Parents'] ability to provide basic care such as diapering, swaddling, and nursing.

On October 1, 2018, [CYS] assessed [Mother's] ability to care for a newborn child. [CYS] observed [Mother] unsuccessfully feed [Child]. [Mother] was unable to change a diaper, pick up [Child], unwrap her from a blanket, or care for her without assistance.

On October 1, 2018, upon [Child's] discharge from the hospital, the [c]ourt issued an Order for Emergency Protective Custody, granting temporary legal and physical custody to [CYS] and placing [Child] in foster care…

On October 4, 2018, [CYS] referred [Parents] to Alternative Behavioral Consultants (hereinafter "ABC") for a joint parental fitness assessment. [CYS] also referred [Parents] to ABC for Guided Visitation, an intensive form of visitation in which a case worker supervises and provides prompts to ensure safety and appropriate communication between parents and children.

On October 15, 2018, the [c]ourt adjudicated [Child] a dependent child, placing her in the legal and physical custody of [CYS] and maintaining her in foster care.

As a result of [Child's] adjudication of dependency, [Parents] were ordered to complete the above-mentioned parental fitness assessment and follow recommendations, obtain/maintain housing and financial stability sufficient to meet the child's needs, and participate in frequent and consistent visitation with the child to build/maintain the parent/child relationship.

[Parents] participated in the parental fitness assessment

through ABC. ABC provided a written report dated October 23, 2018, with the results and recommendations arising from the assessment.

[Parents'] parental fitness assessment identified parenting deficits in basic parenting skills necessary to parent an infant. As a result, [Parents] were recommended for and accordingly ordered to complete additional services.

As a result of the parental fitness assessment, [Mother] was recommended to participate in IQ testing, with Bernadette E. Cachara, Psy.D., to assess her cognitive abilities.[1]

As a result of the parental fitness assessment, [Parents] were also recommended to participate in parenting skills training services.

Initially, [Parents] were recommended to participate together in the Training for Improved Parenting Skills Program (hereinafter "TIPS") to gain parenting knowledge while continuing Guided Visitation to see if basic knowledge could be retained and transferred into practical skills.

[Parents] began participating in Guided Visitation through ABC on or about October 10, 2018. While [Parents] continued participating in Guided Visitation, ABC [implemented] the TIPS education program from November 2018 through December 27, 2018.

At the conclusion of the TIPS program, and with agreement of all parties, ABC recommended [Parents] to transition to the intensive, hands-on SKILLS parenting education program.

SKILLS began on February 25, 2019 and consisted of 90 sessions, totaling approximately 376 hours of intensive, hands-on parenting support provided by ABC.

Although [Parents] attended each of 90 SKILLS sessions, they were unable to successfully complete the program

_____

[1] IQ testing revealed that Mother possessed borderline level of cognitive functioning.

objectives.

[Parents] continued to struggle with identifying [Child's] needs and safety concerns increased with [Child's] stages of development. Both parents struggled with retaining and transferring basic skills to each new developmental stage, including the ability to properly feed and dress [Child].

After the completion of SKILLS, ABC recommended that SKILLS be discontinued due to [Parents'] need for continuous, intensive daily assistance to care for [Child] and assure her safety throughout her various ages and stages of development.

Following their discharge from SKILLS, [Parents] requested that [CYS] offer parenting skills training services through Central Pennsylvania Family Support Services (hereinafter "Central PA").

[Parents] participated in Guided Visitation through ABC following the cessation of SKILLS in August 2019 until Central PA began services on January 6, 2020.

Central PA provided services from January 6, 2020 through approximately February 6, 2020, and declined to offer further services due to [Parents'] resistance to instruction and prompting, lack of progress, and need for full-time resources to assist them in providing care to [Child].

On August 7, 2020, [CYS] filed a Petition for Involuntary Termination of Parental Rights against [Parents].

The [c]ourt held a hearing on the above-mentioned [p]etition on September 22, 2020. At the conclusion of the hearing, the [c]ourt denied the Petition finding the evidence insufficient to support termination of [Parents'] rights.

From February 2020 through April 5, 2021, [Parents] participated in basic supervised visitation through the Children's Aid Society.

On or around October 2020, [CYS] referred [Parents] to Bruce Kelly, MA, CCJP, CCDP, Diplomate, PA Licensed Psychologist, for an assessment to measure their cognitive

abilities and parental abilities.

Mr. Kelly recommended [Parents] do another round of SKILLS through ABC, [Mother] continue with individual counseling, and [Parents] begin couples' counseling.

Per Mr. Kelly's recommendation, [CYS] referred [Parents] to ABC for SKILLS again on March 25, 2021. Jess Hundley, Parent Educator and Parent Reunification Specialist, worked with [Parents] in SKILLS from approximately April 2, 2021 through July 6, 2021.

SKILLS sessions occurred twice a week for a minimum of three (3) hours in duration. Mr. Hundley worked directly with both parents for a total of 152.25 hours during the 90-day SKILLS authorization period.

[Parents] demonstrated dedication to the SKILLS program and communicated with their parent educator; both made individual progress in their lives such as obtaining stable housing and maintaining employment. However, [Parents] experienced limitations that prevented them from meeting their goals within the SKILLS program.

[Parents] lacked understanding of safety concerns, how to maintain existing routine, and how to problem solve the number of issues that present daily with a toddler; Mr. Hundley consequently did not recommend reunification with [Child].

At the conclusion of the SKILLS program, ABC recommended [Parents] return to Guided Visitation, as in home reunification services were not able to improve parental strengths warranting additional SKILLS authorizations.

(Orphans' Court Opinion, filed 12/14/21 at 1-6) (internal citations, footnotes and numbering omitted).

On September 13, 2021, CYS filed the instant petition for involuntary termination of parents' parental rights to Child. The court held a termination

hearing on November 8, 2021. On December 14, 2021, the court granted

CYS' petition. On January 3, 2022, Mother timely filed a notice of appeal and

a contemporaneous concise statement of matters complained of on appeal,

pursuant to Pa.R.A.P. 1925(a)(2)(i).[2]

Mother raises the following issues for our review:

> Did the court misapply the law by determining that
> [Parents] could not meet the needs of [Child] and would not
> do so in the future?
>
> Did the [c]ourt improperly dismiss the efforts of [Mother] to
> make "diligent efforts" to assume parental duties, and the
> fact that [Mother] exerted herself in efforts to maintain a
> place of importance in [Child]'s life?
>
> Did the [c]ourt fail to give proper weight to the fact that
> [Mother] was making satisfactory efforts in working toward
> reunification?
>
> Did the [c]ourt fail to give due weight to precedent which
> states that a parent will not be found to have failed or
> refused to perform parental duties as long as she uses all
> available resources to preserve a parental relationship, and
> is firm in declining to yield to obstacles, in addition to such
> requirements that said obligations must be measured in
> light of what would be expected of an individual in
> circumstance[s] in which said parent finds herself?
>
> Did the [c]ourt fail to give due consideration to its own
> finding that Mother had demonstrated the ability to care for
> a toddler, and merely postulated that same would allow her
> to care for [Child] as [Child] aged?
>
> Did the [c]ourt err by failing to demand that [CYS] make
> reasonable efforts at reunification?
>
> Did the [c]ourt err by failing to acknowledge that [CYS]

---

[2] Father filed a separate notice of appeal, docketed at 54 MDA 2022.

> failed to meet the standard of proof of "clear and convincing evidence?"

(Mother's Brief at 4).

In her issues combined, Mother argues the Orphans' Court erroneously found that CYS presented clear and convincing evidence that Mother was incapable of meeting Child's needs. Mother alleges the court failed to give due consideration to its own finding that Mother demonstrated an ability to care for Child, and based its decision on mere speculation that Mother will not be able to meet Child's future needs. Further, Mother claims the court misapplied the law by ignoring the extraordinary effort and cooperation Mother showed in pursing reunification with Child. Specifically, Mother asserts that the court did not give due consideration to the fact that Mother attended all her training sessions and visitations, complied with all CYS directives, worked diligently to learn necessary parenting skills, and used all available resources to preserve a parental relationship with Child. Moreover, Mother complains that CYS failed to make reasonable efforts at reuniting Mother with Child as it made no effort to place Child with Mother and closely monitor care. Mother concludes the Orphans' Court erred in finding that there were grounds to terminate Mother's parental rights, and this Court must vacate the decree terminating her parental rights. We disagree.

Appellate review of termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our

standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191-92 (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d

1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165

(2008)).

CYS filed a petition for the involuntary termination of Mother's parental

rights to Child on the following grounds:

**§ 2511.  Grounds for involuntary termination**

**(a)  General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*      \*      \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*      \*      \*

(5)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*      \*      \*

(8)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from

the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." **In re Z.P., supra** at 1117.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of …her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

**In re L.M.**, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not

- 10 -

limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. ***In re A.L.D.***, 797 A.2d 326, 337 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." ***Id.*** at 340. Under Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." ***In Interest of Lilley***, 719 A.2d 327, 330 (Pa.Super. 1998).

"Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." ***In re Z.P., supra*** at 1118.

Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of …her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

***In re B., N.M.***, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa.

718, 872 A.2d 1200 (2005) (internal citations omitted).

"[T]o terminate parental rights under Section 2511(a)(8), the following factors must be demonstrated: (1) [t]he child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa.Super. 2003). "Section 2511(a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa.Super. 2003). Once the 12-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of CYS supplied over a realistic time. *Id.* Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of CYS services. *In re Adoption of T.B.B.*, 835 A.2d 387, 396 (Pa.Super. 2003); *In re Adoption of M.E.P., supra*.

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying

close attention to the effect on the child of permanently severing the bond."

***Id.*** Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

***In re Z.P., supra*** at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have …her rights terminated." ***In re B.L.L.***, 787 A.2d 1007, 1013 (Pa.Super. 2001). "[A] parent's basic constitutional right to the custody and rearing of …her child is converted, upon the failure to fulfill …her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." ***Id.*** at 856.

Instantly, the Orphans' Court found:

> Although [Parents] have been cooperative and compliant with [CYS] and generally have participated in their court-ordered services to the best of their ability, they have been unable to successfully demonstrate the ability to learn, retain and transfer safe parenting knowledge and skills, resulting in their inability to meet [Child]'s basic needs and assume a primary caregiving role.

> Despite maintaining safe, stable housing; consistency in income; visitation with [Child]; and participating in the parental fitness assessment; [Parents] have been unable to remedy their parenting deficiencies adequately to meet a standard of minimally adequate parenting and remain unable to safely and appropriately parent [Child].

(Orphans' Court Opinion at 7-8).

The record supports the court's findings. Jess Hundley, a certified expert in social work with respect to parenting education and individuals with intellectual delays, expressed numerous concerns about Mother's ability to parent independently without the support of social services. Specifically, Mr. Hundley noted that Mother and Father had difficulties problem-solving when facing new issues. Mr. Hudley acknowledged that through training both parents were able to cultivate some skills necessary for parenting. Nevertheless, he expressed concern that "by the time [Mother and Father] really got to the meat of the issue, the child is in a different stage of development." (N.T. Termination Hearing, 11/8/22, at 35).

Additionally, Lindsay Gardner, a visitation coordinator who moderated the guided visits between Child and [Parents], also expressed doubts about Mother's parenting abilities. Ms. Gardner testified that she was not comfortable leaving Child unsupervised with Parents because she observed safety concerns during visits, Parents had trouble enforcing appropriate boundaries with Child, and neither parent typically initiated play with Child. Gail Schreiber, a CYS caseworker who oversaw Child's case, also expressed

concerns about Mother and Father's ability to parent Child, specifically noting that Mother had difficulty accomplishing basic parental tasks and was unable to proactively identify safety concerns without prompting.

Our review of the record demonstrates that Mother consistently struggled to competently perform parenting duties, and often failed to perform essential parental tasks without prompting. Allowing Mother to independently parent would result in Child being deprived of adequate parental care. We note that Mother struggled with accomplishing parental tasks even after Mother received approximately 500 hours of intensive parenting training. On this record, we do not find error in the court's determination that Mother is unable to provide essential parental care to Child and cannot remedy the conditions that caused Child's placement. *See In Interest of Lilley, supra*. Therefore, we agree with the Orphans' Court that termination was proper under Section 2511(a)(2). *See In re A.L.D., supra*.

Further, Child has been removed from Mother's care for over three years. During that time, CYS arranged for Mother to undergo approximately 500 hours of parenting services.[3] Although Mother had ample assistance from CYS in helping Mother to remedy the conditions that necessitated Child's

---

[3] The COVID-19 pandemic temporarily prevented Mother from physically visiting Child and receiving parenting services between February 2020 and April 2021. However, Mother did visit Child virtually when COVID-19 concerns prevented in-person visitation. Moreover, Mother received approximately 152 hours of parental training after parenting services resumed in April 2021.

removal, Mother has been unable to do so in a reasonable amount of time. Therefore, we discern no error in the Orphans' Court's determination that termination was proper under Sections 2511(a)(5) and (a)(8). *See In re B., N.M., supra*; *In re A.R., supra*.

Regarding Section 2511(b), the court acknowledged evidence of a bond between Child and Parents. Nevertheless, the court found the long-term benefits to Child of being in a stable home where all her needs are met outweighed the temporary emotional loss for Child. Child has a strong bond with her foster parents and Parents have made minimal progress in getting to a comparable position to meet all of Child's needs. Further, Ms. Schreiber noted a clear difference in how Child interacted with her foster parents as opposed to Mother. Child seeks out foster parents for comfort and nurturing, whereas she views Mother as a person with whom she can just have fun. The record supports the court's findings that termination is in Child's best interests under Section 2511(b). *See In re Adoption of C.D.R.*, 111 A.3d 1212 (Pa.Super. 2015) (affirming termination decision where court acknowledged that Mother and Child were bonded, but reasoned that termination would not be detrimental to Child and would serve Child's best interest and allow Child to find permanency with another family); *In re N.A.M.*, 33 A.3d 95 (Pa.Super. 2011) (explaining mere existence of emotional bond does not preclude termination of parental rights). Accordingly, we affirm the termination decree.

Decree affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/8/2022</u>